IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES L PAYNE,<br><br>    Plaintiff,<br><br>v.<br><br>SHANE BROWN,<br><br>    Defendant. | Case No. 3:25-CV-00825-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This case arises out of Plaintiff Charles Payne's claim that Defendant Shane Brown violated his constitutional right to be free from excessive force during a joint federal and state law enforcement operation at his residence. Brown has moved to dismiss the complaint on the ground that the cause of action recognized by the Supreme Court in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), does not extend to the circumstances here. For the following reasons, the motion is denied.

## BACKGROUND

The following facts are drawn from the complaint and are accepted as true.

Plaintiff Charles Payne is a resident of Madison County, Illinois. Compl. ¶ 2. Defendant Shane Brown is a Belleville Police Officer, but at the time of the events giving rise to the complaint, he was on duty as a United States Marshals Service (USMS) task force officer. *Id.* ¶ 3.

On May 24, 2023, Plaintiff was at home when Brown and other members of a USMS task force arrived with a warrant for the arrest of his son. *Id.* ¶¶ 4, 6. The officers searched the premises but did not locate Plaintiff's son. *Id.* ¶ 6. As the officers left, Plaintiff[1] emerged from the residence with a firearm pointed downwards, prompting multiple officers to draw their weapons. *Id.* ¶ 7. Plaintiff, who was wearing only a tank top and boxer shorts, returned inside, set the weapon down, and retrieved a cellphone to record the officers. *Id.* ¶ 8. Meanwhile, Brown moved to the corner of Plaintiff's porch and, while standing less than 20 feet from Plaintiff, fired four pellet bags at him with a shotgun. *Id.* ¶ 9. Plaintiff alleges he suffered "pain and suffering, mental anguish, and physical wounds," including "physical deformities." *Id.* ¶ 10.

Plaintiff's complaint asserts one claim under *Bivens* for a violation of his Fourth Amendment right to be free from excessive force. Brown moved to dismiss the complaint on October 17, 2025 (Doc. 17), Plaintiff timely responded (Doc. 19), and Brown filed a reply brief (Doc. 20).[2] Discovery presently is stayed until the Court adjudicates the motion to dismiss. (Doc. 22).

---

[1] The complaint identifies "the defendant" as the individual who emerged from the residence with his weapon drawn. In context, it appears this is a typographical error and that it was *Plaintiff* who had his weapon. Compl. ¶ 7.

[2] In his reply brief, Brown observed that Plaintiff's response contained several inaccurate case summations, erroneous citations, and misquotes. (Doc. 20). Plaintiff's attorney then filed an "amended" response brief acknowledging the "drafting errors" in the original brief, which he attributed to his inadequate review of the work of a new attorney. (Doc. 21, pp. 1-2). The Court deems the amended response brief properly filed but cautions Plaintiff's counsel to exercise greater care in future filings.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). The Court accepts as true the complaint's well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 504 (7th Cir. 2013). To survive a Rule 12(b)(6) motion, a plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.*

## DISCUSSION

The logic of Brown's argument is straightforward. He notes that he was acting as a federal officer at the times material to Plaintiff's allegations. Therefore, to hold him liable, the Court would need to imply a cause of action under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), and its progeny. The Court should not do so here, he maintains, because the Supreme Court has strictly cabined that remedy's scope, and the facts of Plaintiff's claim differ materially from those in *Bivens*. He points out that Plaintiff's allegations involve the USMS — a new category of defendant — and the matter is further distinguishable because he was a specially deputized task force officer rather than an ordinary deputy. He contends that recognizing a *Bivens* remedy in this context would imperil the relationship between the USMS and its state and local partners and

that alternative remedies through internal Department of Justice processes further counsel against judicial intervention.

In response, Plaintiff argues that his claim falls within the core of the remedy recognized in *Bivens* itself. He adds that even if his case presented a new context, there is no reason to think that recognizing a remedy would intrude on Congress's prerogatives, and any existing alternative remedies are wholly inadequate.

In the mine-run of civil rights cases, an aggrieved plaintiff will bring a claim under 42 U.S.C. § 1983. However, that statute does not furnish a cause of action against federal officials acting under color of federal law. *Askew v. Bloemker*, 548 F.2d 673, 677 (7th Cir. 1976) (citing *District of Columbia v. Carter*, 409 U.S. 418, 424 (1973)). In fact, no statute expressly authorizes constitutional claims against federal defendants. *See Hammack v. Schneider*, No. 19-00230, 2023 WL 143312, at *2 (S.D. Ill. Jan. 10, 2023) ("When Congress enacted Section 1983, it created no analogous statute authorizing a suit for money damages against individual federal agents and hasn't done so since.").

Out of that landscape came the Supreme Court's 1971 decision in *Bivens*. In that case, a plaintiff alleged that federal narcotics officers had violated his Fourth Amendment rights by using unlawful force in arresting him after entering his apartment without a warrant. *Id.* at 389. While acknowledging that Congress had not provided for a damages remedy in these circumstances, the high court derived such a remedy from the Fourth Amendment itself and the general power of the federal courts to "use any available remedy to make good the wrong done." *Id.* at 396-97 (quoting *Bell v. Hood*, 327 U.S., 678, 684 (1946)).

In the following years, the Court went on to recognize a cause of action under the Fifth Amendment for a woman's claim that a congressman fired her because of her sex, *Davis v. Passman*, 442 U.S. 228, 248-49 (1979), and under the Eighth Amendment's Cruel and Unusual Punishments Clause, where a prisoner's estate alleged federal jailers were liable for failing to provide adequate medical care, *Carlson v. Green,* 446 U.S. 14, 19 (1980). But those three decisions marked the extent of the Supreme Court's willingness to deploy such remedies. "Since 1980 the Court has consistently rejected requests to recognize additional *Bivens* claims." *Snowden v. Henning*, 72 F.4th 237, 241 (7th Cir. 2023). The Court's hesitance stems, at least in part, from a concern for the separation of powers — "The question is 'who should decide' whether to provide for a damages remedy, Congress or the courts?" *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017).

Despite the Court's shifting approach, *Bivens* has never been overruled. *Snowden*, 72 F.4th at 242. Instead, the Supreme Court has instructed courts to engage a two-part inquiry to assess these claims. *See Goldey v. Fields*, 606 U.S. 942, 944 (2025) (per curiam). First, a court must ask whether a plaintiff's claim arises out of "a new *Bivens* context." *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (quoting *Ziglar*, 582 U. S. at 139). If it does not, the claim can proceed. *Snowden*, 72 F.4th at 243. If, however, a claim does present a new context, the court then "ask[s] whether there are 'special factors' indicating that 'the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed.'" *Goldey*, 606 U.S. at 944 (quoting *Egbert*, 596 U.S. at 492). The parties here do not agree at either step of the inquiry.

Brown first contends that this case presents in a new context, focusing principally on the fact (1) that he was working under the USMS and not as a narcotics officer (i.e., the officers in *Bivens*) and (2) that he was a member of the Belleville Police Department deputized by the USMS.[3] Plaintiff views those distinctions are immaterial because his claim and *Bivens* share a focus on federal officers' use of unlawful force in violation of the Fourth Amendment.

In *Ziglar*, the Supreme Court offered a list of several factors relevant to assessing whether a particular case differs meaningfully from a previous *Bivens* case:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

582 U.S. at 139-40.

The Seventh Circuit, for its part, has explained that a case is meaningfully different from a prior *Bivens* case if it "involves facts or legal issues that would require reweighing the costs and benefits of a damages remedy against federal officials." *Snowden*, 72 F.4th at 244. But it is simply "not the case, however, that any degree of variation will preclude a *Bivens* remedy." *Watkins v. Mohan*, 144 F.4th 926, 935 (7th Cir. 2025).

---

[3] Brown also notes a third distinction from *Bivens* — the fact that the officers here acted pursuant to a warrant. He acknowledges, however, that the Seventh Circuit has held that the presence of a warrant is not a meaningful distinction from *Bivens*. *See Snowden*, 72 F.4th at 247 ("Hotel or home, warrant or no warrant — the claims here and in *Bivens* stem from run-of-the-mill allegations of excessive force during an arrest.").

In this case, both sides agree that the most applicable comparator case in the *Bivens* trilogy is *Bivens* itself, which featured allegations that agents of the Federal Bureau of Narcotics entered the plaintiff's home without a warrant and used unreasonable force in arresting him. *Bivens*, 403 U.S. at 389. Plainly, there are striking similarities between the facts of *Bivens* and Plaintiff's allegations here regarding Brown's use of force. But Brown argues the matter is distinguishable because he worked under the USMS and was not enforcing federal drug laws.

It is true that differences in "the statutory or other legal mandate under which the officer was operating" can distinguish a case from *Bivens*. *Ziglar*, 582 U.S. at 140. As Brown points out, the USMS functions under a host of different statutory provisions from the agency in *Bivens*. *E.g.*, 28 U.S.C. § 566 (listing the powers and duties of the USMS). However, courts are split about whether that distinction is meaningful. *Compare Aska v. Yingling*, 734 F. Supp. 3d 792, 796 (N.D. Ill. 2024), *with Fairchild v. Cundiff*, No. 23-01972, 2024 WL 1328885, at *2 (N.D. Ill. Mar. 28, 2024). The Seventh Circuit does not appear to have staked out a position on whether the involvement of the USMS presents a different context from *Bivens*.[4]

This Court finds the reasoning of the Northern District court in *Aska v. Yingling* persuasive. In that case, the plaintiff sued a Senior Inspector with the United States Marshals Service, along with state law enforcement officers, after they allegedly searched

---

[4] It has, however, weighed in on the inverse question, holding in one case that a DEA agent attempting to enforce federal drug laws was *similar* to the defendants in *Bivens*. *See Snowden*, 72 F.4th at 246 ("Agent Henning operated under the same legal mandate as the officers in *Bivens*—the enforcement of federal drug laws. He is also the same kind of line-level federal narcotics officer as the defendant–officers in *Bivens*.").

her home without a warrant. *Aska*, 734 F. Supp. 3d at 794. The USMS defendant moved to dismiss the claim against him, arguing that there was no *Bivens* remedy available. Relevant here, he contended the claim presented a new *Bivens* context because, as a USMS officer, he was among a "new category of defendants." *Id.* at 795-96.

The court rejected that argument. It acknowledged that the defendant's employment as a deputy marshal was a relevant consideration but reasoned that it was less important than the allegations about what the officer actually had done — i.e., conduct a warrantless search of the plaintiff's residence. *Id.* at 796. Other courts have held similarly. *See Lehal v. Cent. Falls Det. Facility Corp.*, No. 13-3923, 2019 WL 1447261, at *11 (S.D.N.Y. Mar. 15, 2019) ("Both *Bivens* and this case involved the same type of federal officers (*i.e.*, arresting agents), who carried out the same type of "official action" (*i.e.*, effecting the arrest of a criminal suspect)."); *Deavers v. Martin*, 629 F. Supp. 3d 389, 402 (S.D.W. Va. 2022). The *Aska* court also pointed to the Supreme Court's own recognition that *Bivens* retains vitality in the "search-and-seizure context in which it arose" and continues to "provide[] instruction and guidance to federal law enforcement officers going forward." *Aska*, 735 F. Supp. 3d at 796-97 (quoting *Ziglar*, 582 U.S. at 134).

This Court adopts the reasoning of *Aska*. After all, if it were possible to meaningfully distinguish *Bivens* solely on account of the specific federal agency that employed a defendant, the case would have been a dead letter long ago: the Federal Bureau of Narcotics, the agency in that case, no longer exists. *See Egbert*, 596 U.S. at 512 (Sotomayor, J., concurring in the judgment in part) (observing that "if the 'new context' inquiry were defined at such a fine level of granularity, every case would raise a new

Page **8** of **14**

context, because the Federal Bureau of Narcotics no longer exists."); *Edwards v. Gizzi*, 107 F.4th 81, 90 (2d Cir. 2024) (mem.) (Parker, J., dissenting) (similar). Likewise, drawing a distinction between officers engaged in "enforcing drug laws" and those engaged in other, more generalized law enforcement activities gerrymanders *Bivens* into a bespoke remedy for drug enforcement activities gone awry. *Cf. Ziglar*, 582 U.S. at 134 (recognizing the "continued force, or even the necessity, of *Bivens* in the *search-and-seizure context* in which it arose." (emphasis added)). More logical is the Fourth Circuit's explanation that "a *Bivens* remedy remains available to address violations of the Fourth Amendment . . . by line officers performing routine criminal law enforcement duties." *Hicks v. Ferreyra*, 64 F.4th 156, 167 (4th Cir. 2023). The Court therefore rejects Brown's argument that this case is distinguishable because it involved the USMS.

Brown identifies another distinction he believes is material: his status as a deputized task force officer pursuant to a partnership between the USMS and state and local law enforcement agencies. *See* 34 U.S.C. § 41503(a) (establishing "permanent Fugitive Apprehension Task Forces consisting of Federal, State, and local law enforcement authorities . . . directed and coordinated by the United States Marshals Service"). This is a stronger argument. The great majority of courts to have considered the issue, including the Fourth, Sixth, Tenth, and Eleventh Circuits, have concluded that such task forces mark a meaningful distinction from the circumstances in *Bivens*. *See Orellana v. Godec*, 145 F.4th 516, 523 (4th Cir. 2025) ("Unlike *Bivens*, this case involves a different statutory scheme: United States Marshals working in a fugitive task force including federal, state, and local agents."); *Cain v. Rinehart*, No. 22-1893, 2023 WL

6439438, at *4 (6th Cir. July 25, 2023);[5] *Logsdon v. United States Marshal Serv.*, 91 F.4th 1352, 1358 (10th Cir. 2024); *Robinson v. Sauls*, 102 F.4th 1337, 1344 (11th Cir. 2024) ("[N]o *Bivens* remedy is available because Ms. Robinson's excessive-force claim arises in a new context — the USMS operating a joint state and federal task force to execute arrest warrants."). These courts reason that recognizing a *Bivens* remedy in this circumstance has the potential to chill participation in these task forces by state and local law enforcement. *E.g.*, *Robinson*, 102 F.4th at 1345; *Logsdon*, 91 F.4th at 1058; *Cain*, 2023 WL 6439438, at *4. And in *Orellana*, the Fourth Circuit connected this concern to the important issue of federal-state relations. *See* 145 F.4th at 524-25.

With due respect to these holdings, this Court doubts that the distinction they identify is sufficient to take the case out of *Bivens*' core. *See Ziglar*, 582 U.S. at 149 (recognizing that some differences "will be so trivial that they will not suffice to create a new *Bivens* context"). The Seventh Circuit has instructed that a difference is "meaningful" if "a case involves facts or legal issues that would require reweighing the costs and

---

[5] The Sixth Circuit's holding in *Cain* (though unpublished) is in some tension with its earlier holding in *Jacobs v. Alam*, 915 F.3d 1028 (6th Cir. 2019). In that case, several sheriff's deputies and Detroit police officers were deputized as Unites States Marshals to participate in the apprehension of a fugitive. 915 F.3d at 1033. The officers apprehended the suspect in one apartment but also swept the plaintiff's separate basement apartment. *Id.* The plaintiff was shot by one of officers after he arrived home to his residence and reacted with apparent shock to the officers' presence. *Id.* at 1033-34. He then brought a *Bivens* action against the officers.

Contrary to the officers' suggestion that plaintiff's claims arose in a "new" *Bivens* context, the court held that the plaintiff's claims were "run-of-the-mill challenges to 'standard law enforcement operations' that fall well within *Bivens* itself." *Id.* at 1038. The Sixth Circuit in *Jacobs* "did not pause to question the applicability of *Bivens* to local law enforcement officers operating under the United States Marshals Service." *Enriquez-Perdomo v. Newman*, 149 F.4th 623, 636 (6th Cir. 2025).

benefits of a damages remedy against federal officials." *Snowden*, 72 F.4th at 244. The instant situation does not require any such analysis.

The Court fails to appreciate a meaningful distinction between regular USMS deputies and task force officers for purposes of *Bivens*. When state and local law enforcement officers participate in a USMS task force, they are federally deputized to perform the functions of a full-fledged Deputy United States Marshal, *see* 28 C.F.R. § 0.112(b).[6] Specially deputized United States Marshals are "federal law enforcement officer[s]" within the meaning of Federal Rule of Criminal Procedure 41. *United States v. Weiland*, 420 F.3d 1062, 1070 (9th Cir. 2005). And state and local employees assigned to federal service are deemed federal employees for the purpose of the Federal Tort Claims Act. *See Laible v. Lanter*, 91 F.4th 438, 442 (6th Cir. 2024) (citing 5 U.S.C. § 3374(c)(2)); *Deavers*, 629 F. Supp. 3d at 398.

Congress set up the Fugitive Apprehension Task Forces as part of the Presidential Threat Protection Act of 2000, Pub. L. No. 106-544, 114 Stat. 2718. By then, the core *Bivens* remedy for violations of the Fourth Amendment right to be free from excessive force had been in place for nearly thirty years, and at the time, federal courts regularly heard *Bivens* claims naming USMS deputies as defendants. *E.g.*, *Wardlaw v. Pickett*, 1 F.3d 1297, 1302 (D.C. Cir. 1993) (considering the merits of a *Bivens* excessive force claim against USMS deputies); *Mellott v. Heemer*, 161 F.3d 117, 121 (3d Cir. 1998) (similar); *Petrazzoulo v. U.S.*

---

[6] The statute instructing USMS to set up these task forces does not explicitly state that local law enforcement participants are to be federally deputized, although it says the task forces should be "directed" by USMS. *See* 34 U.S.C. § 41503(a)). Nevertheless, Plaintiff alleges here that Brown was employed "temporarily under the United States Marshall's [sic] Task Force." Compl. ¶ 3. And Brown writes in his motion that he "was working as a deputized task force officer with the USMS." (Doc. 17 pp. 6-7).

*Marshals Serv.*, 999 F. Supp. 401, 407 (W.D.N.Y. 1998) (similar). There is little reason to doubt that Congress understood that officers involved in these task forces would be subject to *Bivens* liability (in the sphere where *Bivens* applied) *because they were specially deputized*. And it never explicitly abrogated a *Bivens* remedy for deputized task force officers. *See Egbert*, 596 U.S. at 493 n. 2 (recognizing Congress' power to foreclose a *Bivens* remedy); *Hernandez v. Mesa*, 589 U.S. 93, 111 n. 9 (2020).

Those Circuits that have held that USMS joint task force officers present a new *Bivens* context view these officers as a "new category of defendant[]," *e.g.*, *Logsdon*, 91 F.4th at 1358, but that view obscures the reality that Congress did not create any such category as "task force officer." In practice, these individuals apparently operate as deputized marshals. 28 C.F.R. § 0.112(b). The Eleventh Circuit, to its credit, grappled with this problem in a footnote, reasoning that "by the time Congress enacted the statutes addressing USMS fugitive task forces, the Supreme Court had given notice that it was not inclined to expand *Bivens* to new contexts . . . . Given this timing, Congress's 'failure to provide a damages remedy' suggests 'more than mere oversight.'" *Robinson*, 102 F.4th at 1346 n.7 (quoting *Ziglar*, 582 U.S. at 143). But that answer is a *non sequitur* because Plaintiff's claim here otherwise falls within *Bivens*' clear core of cases dealing with "run-of-the-mill allegations of excessive force during an arrest." *Snowden*, 72 F.4th at 247. Simply put, it is no usurpation of Congress's role to recognize a *Bivens* remedy where it was already assumed to exist.

Indeed, a contrary conclusion leads to odd results. According to Brown, the USMS task forces spend much of their time apprehending fugitives on *state* charges. (Doc. 18

p. 7). Were state and local officers undertaking this work in the ordinary course, they would be subject to liability under section 1983 for any misconduct. Yet "members of these federal fugitive task forces do not lose the scope of their federal employment while they are executing state arrests warrants," *Deavers*, 629 F. Supp. 3d at 398, so those courts finding a new *Bivens* context effectively immunize specially deputized officers from constitutional claims. Under this regime, a regular USMS employee operating with a task force would not be similarly insulated. *See Aska*, 734 F. Supp. 3d at 797. The Court sees no basis to believe Congress intended to place these task force officers in a constitutional "no man's land."

As a final argument, Brown suggests that the Department of Justice's internal remedies for officer misconduct are reason enough to avoid the imposition of a *Bivens* remedy. One might observe that the fact task force officers apparently are subject to DOJ oversight is yet another reason to think they are indistinguishable from ordinary USMS deputies and, by extension, that the case does not present a new *Bivens* context. That aside, alternative remedies are relevant only at step two of the inquiry set out by the Supreme Court, *i.e.*, the Court need not weigh them if it concludes a plaintiff's allegations arise in an existing *Bivens* context. *See Egbert*, 596 U.S. at 492-93 (recognizing such remedies among "special factor[s]" the Court must consider "indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" (quoting *Ziglar*, 582 U.S. at 136)). Because the Court concludes Plaintiff's claims do not present a new *Bivens* context, there is no need to assess whether special factors warrant judicial hesitation.

At bottom, Plaintiff alleges that a deputy acting under the auspices of the USMS employed excessive force in violation of his Fourth Amendment rights. Even considering the factual differences identified by the defendant, the circumstances of Plaintiff's case are not meaningfully distinguishable from *Bivens* itself, so the case may proceed. *See Snowden*, 72 F.4th at 247.

## CONCLUSION

For the reasons explained above, Defendant's motion to dismiss (Doc. 17) is **DENIED**. The previously imposed stay on discovery is lifted, and a scheduling conference will be set by separate order.

**IT IS SO ORDERED.**

**DATED: January 30, 2026**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**